IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RIVER VILLAGE WEST LLC, )<br>RIVER VILLAGE LLC, AND )<br>JS II, LLC )<br>   Plaintiffs, )<br>           )<br>  v.         )<br>           )<br>THE PEOPLES GAS LIGHT AND COKE CO., )<br>          )<br>   Defendant. ) | No. 05 C 2103<br><br>Cases Consolidate Before<br>Judge Wayne R. Andersen |

| | |
|---|---|
| THOMAS SNITZER )<br>   Plaintiff, )<br>          )<br>  v.         )<br>           )<br>THE PEOPLES GAS LIGHT AND COKE CO., )<br>          )<br>   Defendant. ) | No. (06 C 4465) |

| | |
|---|---|
| THOMAS SNITZER, )<br>   Plaintiff, )<br>          )<br>  v.         )<br>           )<br>THE PEOPLES GAS LIGHT AND COKE CO., )<br>          )<br>   Defendant. ) | No. 06 C 5901 |

## MEMORANDUM OPINION AND ORDER

This case comes before the court on Plaintiffs', Thomas Snitzer and River Village West LLC's, motion for reconsideration of an order staying the litigation. Defendant, The Peoples Gas Light and Coke Company ("Peoples") subsequently moved the Court to reconsider Defendant's motion for judgment on the pleadings. The issue currently before the Court is one of first

impression: examining whether a Resource Conservation and Recovery Act ("RCRA") citizen suit filed **prior** to the entry of an Administrative Order on Consent ("AOC") is precluded under §113(h) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), which bars legal challenges to a removal or remedial action selected by the Environmental Protection Agency ("EPA"). For the reasons set forth below, the previous stay ordered by this Court is lifted, and Defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiffs, Thomas Snitzer and River Village West LLC, filed three citizen suits under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972, which are now consolidated before this Court. Filed in April 2005, August 2006, and October 2006, all three suits seek injunctive relief requiring Peoples Gas to abate an alleged imminent and substantial endangerment to health or the environment arising from eight former manufactured gas plants along the Chicago River.

In June 2007, well after these three citizen suits were filed, Peoples Gas entered into an Administrative Settlement Agreement and Order on Consent for Engineering Evaluation/Cost Analysis ("AOC") with the EPA pursuant to Sections 104, 106(a), 107, and 122 of CERCLA, as amended by 42 U.S.C. §§ 9604, 9606(a), 9607, 9622. Under the terms of the AOC, Peoples Gas has agreed to work with the EPA to implement removal actions at eleven former manufactured gas plants sites, including the eight at issue in this litigation.

Alleging that Section 113(h) of CERCLA explicitly bars any legal challenges to a removal or remedial action selected by the EPA, and that Plaintiffs' suits constitute such a

challenge, Peoples Gas moved for judgment on the pleadings and alternatively to dismiss and/or stay the litigation. In an order granting Defendant's motion in part and denying in part, this Court stayed the litigation pending the remedy assigned by EPA. Plaintiffs now move this Court to reconsider the stay, while Defendant moves the Court to reconsider its motion for judgment on the pleadings. All parties agree that the stay should be lifted and that this Court should rule on the pleadings.

## LEGAL STANDARD

A court will grant a motion for reconsideration when: (1) the court has patently misunderstood a party; (2) the court has made a decision outside the adversarial issues presented to the court by the parties; (3) the court has made an error not of reasoning but of apprehension; (4) there has been a controlling or significant change in the law since the submission of the issue to the court; or (5) there has been a controlling or significant change in the facts since the submission of the issue to the court. *Bank of Waunakee v. Rochester Cheese Sales Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). In the current litigation, all parties have agreed to lift the stay and now ask this Court to grant such relief as it deems appropriate and just.

Pursuant to Federal Rule of Civil Procedure 12©, a motion for judgment on the pleadings is subject to the same standard as a Rule 12(b)(6) motion to dismiss. *Guise v. BMW Mortgage, LLC*, 377 F.3d 795, 798 (7th Cir. 2004). In evaluating a party's Rule 12© motion for judgment on the pleadings, the motion must only be granted when "it appears beyond doubt that the [opposing party] cannot prove any facts that would support his claim for relief." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 704 (7th Cir. 2004). In determining whether this is the case, the court must evaluate all allegations made in the complaint, and take all well pleaded facts as true.

3

*Resolution Trust Corp. v. KPMG Peat Marwick,* 884 F.Supp. 431, 433 (N.D. Ill. 1994). Further, the court must construe all allegations in the complaint in a light most favorable to the non-moving party. *Thompson v. Ill. Dep't of Prof'l Reg.,* 300 F.3d 750, 753 (7th Cir. 2002). While the court's analysis is limited to the pleadings, it may consider documents incorporated by reference in the pleadings in its analysis. Further, the court may take judicial notice of matters of public record. *See United States v. Wood,* 925 F.2d 1580, 1581-82 (7th Cir. 1991).

## DISCUSSION

Enacted by Congress in 1976, the Resource Conservation and Recovery Act ("RCRA") was passed to address the nation's hazardous waste problem. 42 U.S.C. §§ 6901 *et seq.* In passing this statute, Congress intended to "promote the protection of health and the environment," by "requiring that hazardous waste be properly managed in the first instance thereby reducing the need for corrective action at a future date." 42 U.S.C. § 6902(a) and (a)(5). To meet these goals, RCRA requires that the EPA devise performance standards for the safe handling and disposal of hazardous waste "as may be necessary to protect human health and the environment." 42 U.S.C § 6924(a). In addition to the enforcement power given to the EPA, RCRA also confers on private citizens the right to initiate lawsuits demanding the abatement of imminent and substantial endangerments to public health and the environment, and to bring lawsuits to enforce RCRA's performance standards. 42 U.S.C. § 6972(a). Different from most citizen suits, a suit seeking the abatement of an imminent and substantial endangerment to the public health and the environment does not allege a violation of any substantive provision of RCRA, but instead asks the court to determine what remediation is necessary and what standards should apply to that remediation.

However, the citizen enforcement power offered by RCRA has its limits. Section 6972(b)(1)(B)(iv) ("RCRA jurisdictional bar"), provides that a RCRA citizen suit seeking the abatement of an imminent and substantial threat to the public health or environment is precluded when the EPA administrator has entered an AOC under §106 and the party responsible for the harm is "diligently conducting a removal action." Further, such citizen suits are only precluded as to the scope and duration of the AOC. 42 U.S.C. §6972(b)(1)(B)(iv). This jurisdictional bar serves to preclude lawsuits seeking the abatement of an imminent and substantial endangerment at sites which the government is taking action to remedy. While RCRA gives citizens the power of enforcement, it very clearly revokes that power in cases where the government is acting. Moreover, despite this wide enforcement power, RCRA's coverage is limited to only those management facilities which are currently in operation. 42 U.S.C. §§ 6922-24.

To address gaps such as these, Congress passed the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), addressing the dangers to public health and the environment arising from past release of hazardous waste. 42 U.S.C. § 9601 *et seq*. Under CERCLA, the EPA may borrow money from a fund known as the Superfund, for which it can later seek reimbursement, to pursue cleanup activities. 42 U.S.C. § 9604. In initiating cleanup activities, the EPA may choose to pursue either short term remedies referred to as removal actions, or it may seek permanent remedies, known as remedial actions. *Id.* Additionally, CERCLA gives the EPA power to issue administrative orders requiring responsible parties to undertake private cleanup of released hazardous waste. 42 U.S.C. § 9606.

As with RCRA, CERCLA grants citizens an enforcement power which can be exercised through the initiation of citizen suits. However, CERCLA limits the citizen enforcement power

5

through §9613(h) ("§ 113(h)"). Section 113(h) provides that federal courts lack jurisdiction to hear challenges to any removal or remedial action initiated pursuant to section 9604 of CERCLA or to review any AOC issued pursuant to CERCLA §9606(a). 42 U.S.C. §9613(h). As with RCRA's jurisdictional bar, this section of CERCLA precludes those citizen suits which directly address an ongoing cleanup action. However, CERCLA modifies its prohibition by barring only those suits which constitute a *challenge* to a cleanup effort undertaken by the government. Thus, section 113(h) does provide for some citizen suits to go forward.

Despite their differences, RCRA and CERCLA were enacted as part of the same legislative scheme and constitute most of Congress' hazardous waste management plan. This being the case, there is naturally some question as to how the two statutes are to interact. This question has come up most frequently in the context of the relationship between the citizen suit provisions of RCRA and the jurisdictional limitations present in both statutes. While both CERCLA and RCRA provide for citizen suits meant to aid the EPA in its cleanup efforts, both statutes include jurisdictional bars which limit the ability of private citizens to bring such suits. 42 U.S.C. § 6972(b); 42 U.S.C. § 9613(h). In general, these jurisdictional bars are meant to prohibit citizen suits when the EPA is taking action to remedy the same problem the lawsuit seeks to address.

In the present litigation, the question is whether RCRA citizen suits seeking the abatement of an alleged imminent and substantial threat to the health or environment which *precede* an AOC may be subject to the jurisdictional restrictions of § 113(h). The primary point of contention between the parties is the applicability and interpretation of § 113(h) of CERCLA. It is Plaintiffs' argument that as the three suits at issue in this case stem from the citizen suit

6

provisions of RCRA, it is the relevant provisions of RCRA and not CERCLA which should be applied. Plaintiffs rely on a technicality in the wording of the RCRA jurisdictional bar, arguing that the provision bars only those citizen suits which are filed *after* an AOC has been entered. Further, in an effort to read RCRA and CERCLA harmoniously, Plaintiffs argue that in allowing § 113(h) to preclude the present litigation, the Court will allow this provision to override the requirements of the RCRA jurisdictional bar, rendering it ineffective. We will address each of these arguments in turn.

### I. CERLCA § 113(h) serves as a bar on RCRA citizen suits filed *before* an AOC has been entered

We are unconvinced by Plaintiffs' reading of these provisions and believe that § 113(h) serves as a jurisdictional bar on the present litigation. Beginning with the timing argument, Plaintiffs provide no support, nor does it seem that any exists, for their contention that RCRA bars only those actions filed *after* an AOC has been entered with the EPA. As Defendant rightly notes in its brief, this case is one of first impression. However, assuming chronology is determinative and jurisdiction over the current litigation exists under RCRA, there is still the issue of whether CERCLA § 113(h) divests this Court of jurisdiction over the present litigation. A plain language reading of § 113(h) demonstrates that the provision makes no reference to the timing issues presented by Plaintiffs and speaks in general terms of the inability of federal courts to hear challenges to removal or remedial actions. Further, the withdrawal of federal jurisdiction mandated by § 113(h) is limited by only five specific exceptions, none of which apply to citizen suits filed pursuant to RCRA or make exceptions based on the chronology of the citizen suits. Instead, § 113(h) precludes *any challenge* to a removal or remedial action. 42 U.S.C.A § 9613(h).

Enacted two years after the RCRA citizen suit provision at play in this case, § 113(h) was drafted and approved with full knowledge of a citizen's ability to file a suit seeking the abatement of an imminent and substantial endangerment to the public health and the environment. Had Congress intended to leave suits initiated under this provision untouched by § 113(h), it could have created an exception for such suits.

While no court has been presented with a case addressing the impact of § 113(h) on the type of citizen suit at issue in this litigation, several courts have applied § 113(h) broadly to bar lawsuits attacking actions undertaken by the EPA. *See, e.g. Schalk v. Reilly*, 900 F.2d 1091, 1095 (7th Cir. 1990) (dismissed lawsuits seeking to challenge ongoing EPA cleanup activities); *Northshore Gas Co. v. EPA*, 930 F.2d 1239, 1243-45 (7th Cir. 1991) (dismissed a suit which attempted to enjoin construction deemed part of USEPA's remedial actions); *Boarhead v. Erikson*, 923 F.2d 1011, 1014 (3d Cir. 1991) (dismissed a suit which claimed USEPA cleanup actions were in violation of the National Preservation Act). This logic has been extended further using § 113(h) to bar suits brought pursuant to RCRA. *See, e.g., Razore v. Tulalip Tribes of Washington*, 55 F.3d 236, 239-40 (9th Cir. 1995) (dismissing a RCRA citizen suit claiming EPA actions were in violation of the Clean Water Act); *McClellan Ecological Seepage Situation v. Perry*, 47 F.3d 325, 328-30 (9th Cir. 1995) (dismissing a RCRA citizen suit attempting to alter EPA cleanup actions). In *North Shore Gas Co.*, the Seventh Circuit was faced with a RCRA citizen suit challenging an EPA action. The Seventh Circuit held that §113(h) withdraws jurisdiction over any dispute with regard to EPA activities brought under federal law other than those included as exceptions. 930 F.2d at 1244-45. Based on this broad interpretation of §113(h), we reject Plaintiffs' argument that §113(h) does not serve to bar the present litigation.

8

In light of this broad interpretation of §113(h), we find that the present litigation can properly be analogized to *EPA v. City of Green Forest*, decided by the Eight Circuit. *EPA v. City of Green Forest*, 921 F.2d 1394 (8th Cir. 1990). In that case, the Eighth Circuit held that the jurisdictional bar present in the Clean Water Act ("CWA") barred a citizen suit brought under that statute which attempted to challenge an EPA cleanup action initiated *after* the lawsuit had been filed. *City of Green Forest*, 921 F.2d 1394 (8th Cir. 1990). Basing its decision on the intent behind the citizen suit provisions of the CWA, the Eighth Circuit held that the CWA was intended primarily to be enforced by the government, and citizen suits were provided for merely as a vehicle for action when local and federal agencies have failed to exercise their enforcement responsibilities. *Id.* at 1403.

Although it addressed the CWA rather than RCRA or CERCLA, the policy behind the *City of Green Forest* case applies in the present litigation. Under RCRA, the circumstances under which a citizen suit can be maintained are strictly limited to only those instances when the government has not taken action. It was Congress' intent in enacting restrictions such as these to prevent a multitude of litigation which would otherwise stall government action. Congress gave both the federal and state governments the power to initiate lawsuits on behalf of the public and gave the EPA the power to initiate cleanup activities. In allowing for citizen suits under RCRA, Congress intended for these suits to be utilized only when the government failed to exercise its power under RCRA. RCRA citizen suits are then meant to serve as a contingency, not a hindrance to government action. *McGregor v. Industrial Excess Landfill Inc.*, 709 F. Supp 1401 (N.D. Ohio 1987) *aff'd* 856 F.2d 39 (6th Cir. 1988).

Further, the policy goals underlying CERCLA §113(h) place an emphasis on allowing government action to go forward in the face of citizen suits. Prior to the enactment of § 113(h) in 1986, CERCLA cleanups were rare and the few that were initiated were often delayed by litigation. This not only wasted resources which were best used on CERCLA cleanups, but it also defeated CERCLA's purpose by delaying cleanups and threatening to aggravate already dangerous environmental hazards. In an effort to limit the frequency of such suits, Congress enacted §113(h) explicitly precluding *any challenge* to a removal or remedial action, thus allowing the government to take action, and ensuring citizen suits will be used at the proper time.

II. **For purposes of CERCLA, the current litigation constitutes a challenge to the AOCs entered by the Defendant.**

Having established that §113(h) can properly be used to bar RCRA citizen suits filed before an AOC has been entered, the next inquiry this court must enter is whether the present litigation constitutes a challenge for purposes of CERCLA. In the September 28, 2007 order staying the current litigation, this Court determined that the litigation is within the scope of the AOCs and indeed challenges the AOCs as contemplated by §113(h). Further, we held that §113(h) precludes *any* challenge to an AOC, not just those which delay the AOCs. First, §113(h) clearly states that no federal court will have jurisdiction to review *any* AOC issued pursuant to §106(a) of CERCLA. 42 U.S.C. § 9613(h). In the present case, Defendant has entered an AOC with the EPA pursuant to §106(a). Allowing the present litigation to go forward would be a violation of §113(h), as the present litigation would constitute a review of the §106(a) order.

Further, we disagree with Plaintiffs' argument that the present litigation is not within the scope of the AOCs. The AOCs specifically require that the Defendant, under the supervision of the

10

EPA, investigate and work to correct any imminent or substantial endangerment present at eleven sites along the Chicago River. The eleven sites addressed in the AOCs include those eight sites which serve as the basis for this litigation. In the current suits, Plaintiffs' are essentially asking this court to impose the same requirements the EPA has already initiated. As such, if allowed to proceed, the current litigation would necessarily interfere with the AOCs.

Additionally, this Court believes that in the face of an ongoing action by the EPA, it is this government agency, not the district court, which is best equipped to deal with the alleged hazard in question. Courts gain information and understanding through the adversarial system—an expensive and prolonged system in which to make complicated decisions. The regulatory agency which specalizes in dealing with the particular subject matter is in a better position to make better assessments of action which needs to be undertaken. Moreover, unlike most citizen suits, the endangerment suits which Plaintiffs have presented to this Court do not seek the enforcement of environmental permits, standards, or requirements, but instead ask this Court to determine what remediation is required and what standards should be applied. Unlike the district court, the EPA has specifically been charged with the responsibility to develop and enforce regulations to implement the environmental laws passed by Congress. To properly attend to these responsibilities, the EPA has the scientific understanding and resources necessary to investigate and remediate alleged hazards.

Conversely, the district court has neither the special resources nor the special expertise necessary to properly address or understand the myriad of scientific and policy issues presented by an alleged imminent and substantial endangerment to health or the environment. Whereas the EPA has access to scientists employed at laboratories across the nation who are readily available

11

to investigate and assess potential hazards, the district court's handling of this matter would be delayed by the years of research and discovery which would be necessary to develop a basic understanding of the potential hazards presented by the eight sites at issue in this litigation. Further, the need to defer to the EPA can be seen in the expert testimony put forth by Plaintiffs. Relying on the statement of Dr. Allen Hathaway, Plaintiffs allege that the contamination at the sites is "very substantial" and "constitutes an imminent and substantial endangerment." However, void an actual scientific investigation at these sites, these claims are unsubstantiated. Rather than making a decision based on speculative accounts such as these, the question of what course of action to follow is best left to the EPA. For these reasons, this Court finds that in light of the ongoing EPA action, the EPA has the best ability to prioritize not only the three sites which are the subject of these lawsuits, but other related sites as well.

Finally, by refusing to allow Plaintiffs to go forward with the current litigation, this Court has not denied them all recourse. As we stated in our order granting the stay, we do not wish to discourage citizens from seeking enforcement actions, and we believe that Plaintiffs are entitled to pursue any leftover issues from the EPA actions. Accordingly, we remind Plaintiffs that pursuant to § 113(h)(4), once the ongoing EPA actions at the eight MGP sites at issue have been completed, Plaintiffs may file a CERCLA citizen suit to address any remaining issues relating to the EPA actions at these sites. 42 U.S.C § 9613(h)(4). While Plaintiffs are currently prohibited from going forward with their RCRA suits, they have every right to revisit their concerns once the EPA has concluded its work at these sites.

As such, we hold that this litigation must be dismissed, as the current litigation is barred by § 113(h) as a challenge to ongoing EPA action pursuant to CERCLA.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for reconsideration [#30 in case no. 06 C 5901] is granted. This Court's previous order of September 28, 2007, which denied Defendant's motion for judgment on the pleading and granted the motion to stay, is hereby vacated. The previous stay of this litigation is lifted. Defendant's motions for judgment on the pleadings [ # 48 in case no. 05 C 2103; # 37 in case no. 06 C 4465] are granted. All other pending motions, including Defendant's motion to strike the Declaration of Dr. Allen Hatheway [ # 59 in case no. 05 C 2103], are denied as moot. These cases are herby terminated. This is a final and appealable order.

It is so ordered.

_____
Wayne R. Andersen
United States District Judge

Dated: September 25, 2008